United States District Court
Southern District of Texas
**ENTERED**
February 17, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. H-16-0273 |
| v. | § § | |
| STEADFAST INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Two insurers dispute which policy covers what part of an apartment manager's liability for negligence. Scottsdale Insurance Company defended and settled a lawsuit against its insured, Kaplan Management Company, Inc., for $1,950,000 plus defense costs and attorney's fees. Scottsdale sued Steadfast Insurance Company, alleging that Steadfast had issued a policy providing primary insurance coverage for the claim against Kaplan Management, obligating Steadfast to defend the underlying litigation and to contribute pro rata to the settlement. Scottsdale also alleges that Steadfast's insurance coverage is prior to Scottsdale's excess insurance policy and that the Steadfast coverage must be exhausted before Scottsdale is required to contribute under its excess policy. Scottsdale moved for summary judgment on its claims for contribution. (Docket Entry No. 24). Steadfast cross-moved for summary judgment, arguing that it issued Kaplan Management only an excess insurance policy and that Scottsdale did not make a prima facie showing of Kaplan Management's liability for the settlement amount. (Docket Entry No. 25). The relevant facts are undisputed. The coverage issues are issues of law for the court to decide.

1

The court grants in part and denies in part the cross-motions. The undisputed facts in the record establish that Kaplan Management did not have primary insurance coverage from Steadfast, but that Steadfast's excess policy takes priority over Scottsdale's and must be exhausted before Scottsdale's excess policy applies.

The reasons for these rulings are set out below.

**I.     Background**

The parties filed an agreed record, with the insurance policies as well as the court documents from the underlying lawsuit. (Docket Entry No. 22). That lawsuit was filed on behalf of a five-year-old boy who was seriously injured when he fell into a swimming pool at the CityView Place Apartments in April 2011. (*Id.* at 3). CVP Holdings, LLC owns CityView; Kaplan Management Company, Inc. manages the property. (*Id.* at 4). The boy's father, William Aguilar, sued both companies for negligence and premises liability. (*Id.*, Exs. 4–5). Scottsdale, a primary insurer for CVP Holdings and Kaplan Management, defended the suit and settled it for $1,950,000 on behalf of both CVP Holdings and Kaplan Management. (*Id.* at 8). Scottsdale argued throughout the proceedings in the underlying suit that Steadfast was a primary insurer of Kaplan Management and obligated to participate in defending the litigation and to contribute to the settlement costs. (*Id.* at 6–8). Steadfast did not participate in the defense, despite Scottsdale's repeated demands, and did not pay any part of the settlement. (*Id.*).

**A.     The Scottsdale Policy**

Scottsdale policy number BCS 0019674, with effective dates of May 1, 2010 to May 1, 2011, provided primary insurance for up to $1,000,000 "per occurrence" and gave Scottsdale the right and duty to defend suits against its insureds seeking damages for bodily injury. (Docket Entry No. 22,

Ex. 1). Scottsdale issued its policy to CVP Holdings. The policy included as insureds "[a]ny person . . . or organization while acting as [CVP's] real estate manager." (*Id*. at *31–32). This Scottsdale policy stated:

> If this insurance is primary, our obligations are not affected unless any other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below [providing for pro rata apportionment].

(*Id*. at *33).

CVP Holdings and Kaplan Management also had an excess policy with Scottsdale, policy number XLS 0066777, with effective dates of May 1, 2010 to May 1, 2011. (Docket Entry No. 22, Ex. 2). The policy provided coverage after the $1,000,000 primary liability limit per occurrence was exhausted. This Scottsdale policy stated:

> If there is any other collectible insurance available to the insured (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this Policy, the insurance provided by this Policy will apply in excess of, and shall not contribute with, such insurance. This Condition I. does not apply to any insurance policy purchased specifically (and which is so specified in such insurance policy) to apply in excess of this Policy.

(*Id*. at *38). To use the short-hand, Scottsdale's primary policy had a pro rata "other insurance" clause, while Scottsdale's excess policy had an excess "other insurance" clause.

### B.     The Steadfast Policy

Steadfast policy number SCO 3808274, with effective dates of May 29, 2010 to May 29, 2011, was issued only to Kaplan Management. (Docket Entry No. 22, Ex. 3). The policy provided insurance for up to $1,000,000 "per occurrence" and gave Steadfast the right and duty to defend suits seeking damages for bodily injury, if the insurance was primary. The policy stated that "[t]his insurance is primary except when there is other insurance applying on a primary basis." (*Id*. at *15). In that case, the insurance was excess. (*Id*.). Steadfast's policy had an excess "other insurance"

clause. The Steadfast policy also contained the following endorsement:

> With respects [sic] to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any valid and collectible insurance to you.

(*Id*. at *40). The endorsement applied to the "Commercial General Liability Coverage Part" of the Steadfast policy, which included the primary-insurance clause and the excess "other insurance" clause. (*See id*. at *5 ("Commercial General Liability Policy"), 15 (primary and "other insurance" clauses), and 40 (endorsement)).

### C. The Cross-Motions for Summary Judgment

Scottsdale argues that under Texas law, both Scottsdale and Steadfast issued Kaplan Management primary insurance policies with conflicting "other insurance" clauses. Scottsdale argues that because the "other insurance" clauses conflict, they drop out, leaving Scottsdale and Steadfast to contribute pro rata to the costs of defending Kaplan Management and settling the claims, up to the primary policy limits. (Docket Entry No. 24 at 6–14). Scottsdale also argues that its excess insurance policy's "other insurance" clause makes that policy fully subordinate to Steadfast's policy, so that Steadfast has to exhaust its policy limits before Scottsdale's excess policy has to contribute. (*Id*. at 14–15). In sum, Scottsdale argues that Steadfast must contribute pro rata to the costs and fees incurred defending Kaplan Management in the underlying litigation, must contribute equally to Kaplan Management's share of the settlement liability up to the $1,000,000 per-occurrence limit, and must exhaust the Steadfast policy limit before Scottsdale's excess insurance policy is required to contribute.

Steadfast has cross-moved for summary judgment. It argues that: (1) Scottsdale has not and cannot allocate coverage for the settlement amount owed solely by Kaplan Management; and (2)

CVP Holdings must indemnify Kaplan Management, so Steadfast need not contribute to the costs of defending and settling the claims against Kaplan Management. (Docket Entry No. 25). Steadfast also argues that the endorsement in its policy makes that policy excess because Kaplan Management is a property manager. (*Id*. at 5–8). At oral argument at the motion hearing, Steadfast argued that if it is found to be an excess insurer responsible for some of the settlement paid on Kaplan Management's behalf, then under Texas law the conflicting "other insurance" clauses drop out and Scottsdale and Steadfast must contribute equally to the settlement after Scottsdale's primary coverage is exhausted. (Docket Entry No. 29). In short, Steadfast argues that, even if Scottsdale has met its burden and an indemnity agreement does not relieve Steadfast of liability, Steadfast is not liable for defense costs and fees or for contribution to the settlement as a primary insurer. Instead, according to Steadfast, it only has to contribute pro rata with Scottsdale under each insurer's excess policy after Scottsdale's primary coverage is exhausted.

The court considers each of these arguments under the appropriate legal standards.

## II.     The Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (alteration omitted) (quotation marks omitted). When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required

by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

### B.      Conflicting "Other Insurance" Clauses under Texas Law

Conflicts involving "other insurance" clauses arise when "more than one policy covers the same insured and each policy has an 'other insurance' clause which restricts its liability by reason of the existence of other coverage." *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 586 (Tex. 1969). In *Hardware Dealers*, the Texas Supreme Court ruled that when an insured would receive "coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict . . . solved by ignoring the two offending provisions." *Id.* at 589.

*Hardware Dealers* dealt with two conflicting "escape" clauses, but the Fifth Circuit "has interpreted *Hardware Dealers* broadly, holding that even when a plausible interpretation of opposing 'other insurance' clauses would render one policy's coverage primary and the other's excess, if a 'reasonable construction' of the two policies from the insured's perspective would result in full coverage under each policy but for the existence of the other, the policies conflict and liability should be apportioned pro rata." *Am. States Ins. Co. v. Ace Am. Ins. Co.*, 547 F.App'x 550, 553 (5th Cir. 2013) (per curiam) (citing *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 642–44 (5th Cir. 2004); *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010).

**III.    Analysis**

    **A.    Primary Coverage**

The first issue is whether the "other insurance" clauses in the Scottsdale and Steadfast policies conflict. If so, they drop out and the insurers contribute pro rata to pay the costs of defending and settling the claims against Kaplan Management in the underlying litigation. If the clauses do not conflict, they are enforced. "Where the terms of an insurance policy are clear and unambiguous those terms may not be disregarded, but must be enforced as written." *Mutual Life Ins. Co. v. Steele*, 570 S.W.2d 213, 217 (Tex. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.).

In *American States Insurance*, the Fifth Circuit considered auto insurance policies that provided primary insurance for cars that the policyholder owned and excess coverage for cars he did not own. 547 F.App'x at 552. Because the insured was the car owner under one policy but a nonowner under the other, the "other insurance" clauses did not conflict and *Hardware Dealers* did not apply. "Unlike the 'other insurance' clauses in *Hardware Dealers* and subsequent decisions of this court interpreting *Hardware Dealers*, the existence of primary coverage under each of the 'other insurance' clauses in the American States and ACE policies turns not on the availability of other insurance but rather on vehicle ownership." *Id.* at 553–54 (internal citations omitted).

Steadfast argues that the *American States* analysis applies because whether its policy is primary or excess does not turn on the existence of other insurance but on whether the policyholder is or is not a property manager. (Docket Entry No. 25 at 5–8). Since Kaplan Management is a property manager, Steadfast argues that its policy is excess, regardless of what other insurance Kaplan Management might have. (*Id.* at 6). Scottsdale responds that Steadfast's endorsement is another excess insurance clause, that it does conflict with Scottsdale's pro rata clause, and that both

get knocked out under *Hardware Dealers*. (Docket Entry No. 27 at 3–4).

The *Hardware Dealers* test, as applied by the Fifth Circuit, requires this court to analyze each policy "but for" the other, from the insured's perspective. *See Royal*, 391 F.3d at 644; *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 210 (5th Cir. 1996). If the insured would have a primary policy but for the presence of the other insurance, both insurers are primary and must contribute pro rata, despite the terms of their "other insurance" clauses. *See id*. But for Steadfast's policy, from Kaplan Management's perspective it had a primary policy from Scottsdale, which required Scottsdale to defend Kaplan Management in the underlying suit.

Because Kaplan Management was a property manager, the endorsement in the Steadfast policy made Kaplan Management's Steadfast insurance excess, whether the Scottsdale policy existed or not. *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010) (a specific policy endorsement controls over general provisions in the main policy). As in *American States*, the availability of primary coverage turns on the insured's status, not on the presence of other insurance. *See* 547 F.App'x at 552.

Scottsdale argues that Steadfast's endorsement logically requires the presence of other insurance to operate as an excess policy because, but for Scottsdale's primary policy, no insurer would defend and Steadfast would have been obligated to do so. That analysis misapplies the *Hardware Dealers* test. Steadfast's policy provided that "[w]hen this insurance is excess, we will have no duty to defend any claim or 'suit' that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers." (Docket Entry No. 22, Ex. 3 at *11). Without the Scottsdale policy, Steadfast would have defended the *Aguilar* suit, but it would have done so as an excess insurer,

9

retaining the right to seek defense costs from any primary insurers, in this case, Scottsdale. *Hardware Dealers* applies to conflicting insurance policies that would both otherwise be primary but for the other. *See, e.g.*, *Utica Nat'l Ins. Co. v. Fidelity & Casualty Co.*, 812 S.W.2d 656 (Tex. App.—Dallas 1991, writ denied); *Carrabba v. Employers Casualty Co.*, 742 S.W.2d 709 (Tex. App.—Houston 1987, no writ). The absence of the Scottsdale policy would not convert the Steadfast excess policy to a primary policy.

Kaplan Management had an excess policy from Steadfast. The Scottsdale and Steadfast "other insurance" clauses do not conflict and do not drop out under *Hardware Dealers*. *See American States*, 547 F.App'x at 552.

The court finds that under Texas law, Kaplan Management had primary coverage from Scottsdale and excess coverage from Steadfast. Between the two insurers, Scottsdale, and only Scottsdale, had the right and duty to defend Kaplan Management in the *Aguilar* suit, and Scottsdale is solely responsible to pay the costs of defending the underlying suit. Scottsdale's primary coverage limit of $1,000,000 must be exhausted before Steadfast is required to contribute to Kaplan Management's portion of the liability under Steadfast's excess policy.

Steadfast's cross-motion for summary judgment on the primary policy claim is granted.

### B. Excess Coverage

Steadfast argues that it is not required to contribute to the settlement payment at all because its policy is excess not just to Scottsdale's primary policy, but also to Scottsdale's excess policy. (Docket Entry No. 25 at 15). At oral argument, Steadfast argued in the alternative that both its excess policy and Scottsdale's excess policies have conflicting "other insurance" clauses that drop out under *Hardware Dealers* and require both insurers to cover Kaplan Management's portion of

the excess liability, pro rata. (Docket Entry No. 29). Scottsdale argues that its excess policy does not have an "other insurance" clause but instead an umbrella clause that determines priority among excess insurers. (Docket Entry No. 27 at 6). Scottsdale contends that Steadfast's excess policy limit had to be exhausted before Scottsdale has to cover any part of Kaplan Management's settlement liability. (*Id.*).

In *Carrabba*, the Texas appellate court considered two insurance policies with close to the same language as the policies here. 742 S.W.2d at 709. One policy, issued by Mission National Insurance Company, stated:

> If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is specifically stated to be excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance.

*Id*. at 713. The other policy, issued by Gulf Insurance Group, had an endorsement that stated:

> The insurance afforded by this endorsement shall be excess insurance over any other valid and collectible insurance available to the insured.

*Id*.

The Mission Insurance and Gulf Insurance clauses are like the relevant Scottsdale and Steadfast clauses. The first clause makes the insurance excess to any other insurance policy unless that other policy specifically states that it is excess. The other clause is an endorsement stating that the policy is excess "over any other valid and collectible insurance." (*Compare id. with* Docket Entry No. 22, Ex. 2 at *38 *and* Docket Entry No. 22, Ex. 3 at *40). The *Carrabba* court ruled that the Mission Insurance and Gulf Insurance clauses did not conflict under *Hardware Dealers* and that the Gulf Insurance policy limit had to be exhausted before the Mission Insurance policy would apply. 742 S.W.2d at 715. The court rejected Gulf Insurance's argument that its policy reference

to "any" valid collectible insurance included the Mission Insurance policy because the Gulf Insurance policy did not specifically "designate[] the Mission policy (presumably by number) as an underlying policy," as the Mission Insurance policy required. *Id*. at 714. The court found that the *Hardware Dealers* rule did not apply because "[t]he 'other insurance' . . . excess clause and an umbrella policy are not equivalent and are not mutually repugnant so that they cancel one another." *Id*. at 715. The court reasoned that umbrella policies, which are "regarded as true excess over and above any type of primary coverage including excess provisions arising from primary policies," cover a different kind of risk than an ordinary excess policy and are accordingly priced differently in insurance markets. *Id. Hardware Dealers*, by contrast, applied to policies that covered the same risk but had conflicting "other insurance" clauses. *Id*.

*Carrabba*'s rule and reasoning both apply here. Steadfast's "other insurance" clause did not designate Scottsdale's policy as underlying insurance. Rather, using the same language the *Carrabba* court considered, Scottsdale designated its excess policy as an umbrella policy, taking the lowest priority behind any other available insurance. Under Texas law, Steadfast's excess policy limits must be exhausted before the Scottsdale excess policy applies. Because Kaplan Management's maximum liability in this case is the $1,950,000 settlement, and because Scottsdale's primary policy and Steadfast's excess policy both have a limit of $1,000,000 per occurrence, Scottsdale's excess policy will not apply.

Scottsdale's motion for summary judgment on the excess policy claim is granted.

### C. Apportionment

Steadfast argues that even under its excess policy, it cannot be liable to contribute to the *Aguilar* settlement because Scottsdale has not met its burden to allocate the settlement amounts

between Kaplan Management and CVP Holdings. (Docket Entry No. 25 at 8–9). Steadfast notes that Scottsdale settled the underlying litigation on behalf of both its insureds, CVP Holdings and Kaplan Management, but Steadfast insures only Kaplan Management. (*Id*). Steadfast cross-moved for summary judgment, arguing that Scottsdale has not met its burden of pleading and proving that Kaplan Management owes covered damages. *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 649 F.Supp.2d 613, 649 (S.D. Tex. 2009). Steadfast argues that Scottsdale cannot meet this burden because Scottsdale retained a single lawyer for the *Aguilar* defense and did not allocate damages between CVP Holdings and Kaplan Management in the filings in the underlying lawsuit. (Docket Entry No. 25 at 10–11).

Scottsdale responds that proving apportionment is not ripe under the court's scheduling order, and that it has made a sufficient prima facie showing that Kaplan Management is liable for at least some portion of the settlement. (Docket Entry No. 27 at 11–12). The court agrees. The complaint alleges, and the summary judgment record shows, that the plaintiffs in the underlying *Aguilar* lawsuit sought damages for negligence against Kaplan Management. (See Docket Entry No. 1 ¶ 6; No 22, Ex. 5; No. 24, Ex. 2). In the Property Management Agreement between CVP Holdings (the owner) and Kaplan Management (the manager), CVP Holdings agreed to indemnify and hold Kaplan Management harmless for all debts and liabilities arising in connection with the property "except for any such debt or liability that arises because of Manager's negligence. . . ."[1] (Docket Entry No. 22, Ex. 24 at *20–21). Because Kaplan Management is responsible for its own negligence

---

[1] Steadfast argues that under the Property Management Agreement, CVP Holdings "must provide indemnity to the extent Kaplan was not negligent" and that indemnification agreements can moot "other insurance" clauses when an insured indemnitor agrees to pay the liability of another party. *American Indemn. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 436 (5th Cir. 2003). Because the court finds that the "other insurance" clauses in this case do not conflict, the indemnity agreement between CVP Holdings and Kaplan Management does not trump those clauses and does not bear on the coverage issues.

under the Property Management Agreement, and because Kaplan was sued for negligence in the underlying lawsuit, Scottsdale has met its burden to make a prima facie showing that at least some portion of the *Aguilar* settlement was paid to dismiss the Aguilars' claims against Kaplan.

"[T]he Fifth Circuit [has] expressly held that a district court may make new factual findings in coverage actions" after the underlying suit has concluded. *Nat'l Fire Ins.*, 649 F.Supp.2d at 649 (citing *Nat'l Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008)). The fact that Scottsdale's counsel in the underlying suit did not apportion damages between the insureds during the litigation does not prevent this court from doing so on an adequate record. The preliminary issue to be resolved in this case was Kaplan Management's policy coverages from Scottsdale and Steadfast. In its initial scheduling order, the court asked the parties to limit their cross-motions to that issue. (Docket Entry No. 20). Having resolved the coverage issues, the court will consider apportionment in the next phase of this litigation.

Steadfast's motion for summary judgment for failure to apportion liability is denied at this time, without prejudice.

**IV.  Conclusion**

Scottsdale's and Steadfast's cross-motions for summary judgment are granted in part and denied in part. Steadfast's motion for summary judgment on Kaplan Management's primary policy coverage is granted. Scottsdale was Kaplan Management's sole primary insurer and is entirely responsible for the defense fees and costs incurred in the underlying lawsuit. Scottsdale's primary policy limit of $1,000,000 must be exhausted before excess coverage applies.

Scottsdale's motion for summary judgment on Kaplan Management's excess policy coverage is granted. Scottsdale provided Kaplan an umbrella policy excess to Steadfast's excess coverage.

Steadfast's excess policy limit of $1,000,000 must be exhausted before Scottsdale's excess coverage applies.

Steadfast's motion for summary judgment on Scottsdale's failure to apportion is denied, without prejudice, as unripe.

The parties have requested mediation on the question of apportionment. No later than February 24, 2017, the parties must file the name of their chosen mediator. The mediation deadline is April 28, 2017.

SIGNED on February 17, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge